UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                           NO: 14-284

BRANDON LICCIARDI                                SECTION: "H" (4)
ERIK NUNEZ

ORDER AND REASONS

Before the Court are Defendant Brandon Licciardi's Motion to Strike Superseding Indictment (Doc. 310); Defendant Eric Nunez's Motion to Strike Superseding Indictment Surplusage (Doc. 317); Defendant Erik Nunez's Motion to Dismiss for Vindictive Prosecution (Doc. 320); Defendant Erik Nunez's Motion for Production of Grand Jury Transcripts (Doc. 318); Defendant Erik Nunez's Motion to Dismiss Count 6 (Doc. 321); Defendant Erik Nunez's Motion to Sever (adopted by Defendant Licciardi) (Doc. 319); and Defendant Brandon Licciardi's Motion to Request an Evidentiary Hearing Pursuant to Federal Rule of Evidence 104 (Doc. 313). Defendant Brandon Licciardi has also filed a Motion to Reurge Rec. Doc. Nos. 129, 203, 204, and

1

205 (Doc. 312), which include his earlier Motion to Sever (Doc. 129); Motion for Judicial Referral to the Department of Justice (Doc. 203); Motion to Dismiss on Double Jeopardy Grounds (Doc. 204); and Motion to Dismiss on Ex Post Facto Grounds (Doc. 205).  The Court took these Motions under advisement following oral argument on May 12, 2016.  For the following reasons, these Motions are DENIED.

## BACKGROUND

On March 31, 2016, the Grand Jury returned a six-count Fourth Superseding Indictment charging Defendants Brandon Licciardi and Erik Nunez with various criminal violations.[1]  Count One is a conspiracy count charging both Defendants with conspiracy to dispense various drugs with the intent to commit rape in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(2), and (b)(7)(A), all in violation of 21 U.S.C. § 846.  The Indictment charges ten overt acts in support of this conspiracy.   Count Two charges Defendant Licciardi with a substantive act of distribution of various drugs with intent to commit rape in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(2), and (b)(7)(A) and 18 U.S.C. § 2.  Count Three charges both Defendants with a substantive act of distribution of various drugs with intent to commit rape in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(2), and (b)(7)(A) and 18 U.S.C. § 2.  Counts Four and Five charge Defendant Licciardi with witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A), and Count Six charges Defendant Nunez with

---

[1] Doc. 291.

suppression of evidence in violation of 18 U.S.C. §§ 1512(c)(1) and 2. These Motions were made based on this indictment.

After these Motions were argued the Government obtained a Fifth Superseding Indictment in an effort to correct some of the alleged deficiencies identified in Defendants' motions. Counts One, Two, and Three now contain the additional allegation that Defendants distributed drugs without the victim's knowledge. Additionally, these same Counts now only charge Defendants with violations of 21 U.S.C. §§ 841(a)(1) and (b)(7)(a).

## LAW AND ANALYSIS

Generally speaking the Motions pending before the court can be divided into two categories: Motions to Sever and Motions to Dismiss.[2] The Court will address each category separately.

### I. Motions to Sever (Docs. 319 and 312)

For the second time, Defendants have asked the Court for a severance. Defendant Brandon Licciardi has reurged his initial Motion to Sever, in which he argued that joinder is improper under Fed. R. Crim. Pro. 8(b) and Fed. R. Crim. Pro. 14 (Doc. 312). Defendant Nunez has filed a new Motion to Sever (Doc. 319). In both reply briefs, the parties have raised new issues concerning *Bruton* and mutually antagonistic defenses.[3] Nunez argues that the quantity

---

[2] The Court will also address related ancillary motions with the Motions to Dismiss.
[3] The Court notes that the *Bruton* issues are not properly before the Court as they were first raised in Nunez's reply brief instead of in his Motion. Nevertheless, in the interest

3

of evidence that the Government intends to introduce against Licciardi will result in an impermissible spillover effect. Both Defendants argue that certain text messages between Licciardi and Sharper that Licciardi intends to use as part of his defense render joint trial of this matter impossible due to both *Bruton* concerns and mutually antagonistic defenses.[4]

### A. Defendants are Properly Joined under Rule 8(b)

At the outset, Defendants have not presented any new arguments in favor of a severance under Rule 8(b). Rule 8(b) permits the joinder of two or more defendants in the same action if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transaction, constituting an offense or offenses."[5] Defendants' earlier arguments concerning Rule 8(b) stemmed from the fact that Defendants Licciardi and Nunez were not named in the same count of the Second Superseding Indictment.[6] The Court ruled that such a concern was obviated by the Third Superseding Indictment, which charged both defendants in a conspiracy count. The Court notes that this concern is further obviated by the Fourth and Fifth Superseding Indictments, wherein Nunez and Licciardi are charged together

---

of judicial efficiency, the Court will address this issue. The Court specifically notes that the Government has been given an opportunity to respond to these new arguments.

[4] The Court notes that its review of these Motions is complicated by the fact that Defendants' arguments for severance based on *Bruton* and mutual antagonism are intertwined.

[5] Fed. R. Crim. Pro. 8(b).

[6] Doc. 94.

4

in both a conspiracy count and a substantive count.  Accordingly, joinder under Rule 8 remains proper.

### B. Spillover Effect Does Not Mandate a Severance

Where joinder is proper under Rule 8, Rule 14 grants the district court broad discretion to grant a severance if a joint trial would result in undue prejudice.  Where a defendant seeks a severance under Rule 14, he must overcome "significant obstacles."[7]   "The federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"[8]  Indeed, it is the general rule that "persons indicted together should be tried together, especially in conspiracy cases."[9] "It is well settled that defendants are not entitled to severance merely because they might have a better chance of acquittal in separate trials."[10] Indeed, "the mere presence of a spillover effect does not ordinarily warrant severance."[11]  Any potential prejudice can often be cured by jury instructions, which a jury is presumed to follow.[12]

Nunez points to a risk of spillover because the Government intends to introduce a significant quantity of evidence against Licciardi that does not

---

[7] *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012).
[8] *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotation marks omitted)).
[9] *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993).
[10] *Zafiro*, 506 U.S. at 540.
[11] *Pofahl*, 990 F.2d at 1483.
[12] *Id.*

5

implicate Nunez. He avers that the prejudice that he "will suffer when he is tried with a former law enforcement officer accused of participating in many incidents of drug distribution and sexual assault cannot be overstated."[13] This argument is not persuasive, particularly where, as here, the Defendants are charged together in both a conspiracy count and a substantive count. Clear Fifth Circuit precedent indicates that "a quantitative disparity in the evidence is clearly insufficient in itself to justify severance."[14] Accordingly, any potential spillover effect does not warrant a severance in this matter.

### C. Mutual Antagonism Does Not Mandate a Severance

Defendants next argue that a severance is mandated under Rule 14 because their defenses are mutually antagonistic. Specifically, Defendants point to their differing versions of events that occurred on the night of September 23, 2013 as warranting a severance. The Government contends that Licciardi, Nunez, and Sharper, aiding and abetting each other, surreptitiously gave two victims (one of whom was previously identified as "D.D.") a controlled substance that caused them to become incapacitated and unable to fully recall events from the prior evening. The Government avers that this was done in furtherance of the alleged conspiracy to distribute controlled substances with the intent to commit rape. Nunez argues that he was unaware of any alleged drug conspiracy, and further maintains that he did not have sex with D.D. Licciardi avers that he was likewise unaware of a

---

[13] Doc. 319.
[14] *Pofahl*, 990 F.2d at 1483 (citations omitted).

6

drug conspiracy and had in fact returned to Sharper's condominium because he was concerned about D.D. He contends that he found Nunez having sex with her and relies on a text message conversation between himself and Darren Sharper to support this version of events.[15]

The Fifth Circuit has indicated that the following standard is applicable in evaluation of whether a severance is mandated based on mutual antagonism:

> To compel severance the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive. The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other. Such compelling prejudice does not arise where the conflict concerns only minor or peripheral matters which are not at the core of the defense.[16]

Put differently, "[i]n order to compel severance on the theory that defenses are mutually antagonistic, the defense of one party, if believed, must necessarily indicate the guilt of the other party."[17]

The proffered antagonistic defenses do not rise to the level of mutual antagonism necessary to mandate a severance. At their core, both defenses are based on the contention that neither defendant knew of any plan to distribute drugs with the intent to commit rape. Accepting Defendant Licciardi's proffered defense as true does not compel the jury to find that Nunez

---

[15] Defendants aver that this conversation creates its own problems under the *Bruton* doctrine, discussed below.
[16] *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir. 1984).
[17] *United States v. Stotts*, 792 F.2d 1318, 1321 (5th Cir. 1986).

7

was involved in the conspiracy to distribute drugs.  Accordingly, a severance is not warranted on this ground.

### D. *Bruton* Does Not Mandate a Severance

Nunez and Licciardi finally ask the Court for a severance based on the rule announced in *United States v. Bruton*.[18]  Defendant Licciardi avers that he intends to introduce portions of a text message conversation between him and Darren Sharper in support of his defense that he was not involved in the conspiracy to drug and rape women.  In *Bruton,* the Supreme Court held that "when, in a joint criminal trial of codefendants, an out of court statement is made by a nontestifying codefendant and that statement expressly incriminates a second codefendant, the statement cannot be introduced at the joint trial, even if the trial court instructs the jury that it should not consider the statement against the second codefendant."[19]  *Bruton*'s objective is to protect a criminal defendant's Sixth Amendment right to confront and cross-examine the witnesses against him.[20]  "Only [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."[21]  Many other circuits have held that *Bruton*'s protections apply only

---

[18] 391 U.S. 123 (1968).
[19] *United States v. Payan*, 992 F.2d 1387, 1393 (5th Cir. 1993) (citing *United States v. Bruton*, 391 U.S. 123 (1968)).
[20] *See Crawford v. Washington,* 541 U.S. 36, 50 (2004).  ("[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.").
[21] *Davis v. Washington*, 547 U.S. 813, 821 (2006).

to statements by co-defendants that are testimonial in nature.[22] Further, such an approach was cited with approval by the Fifth Circuit in *United States v. Vasquez*.[23] Accordingly, to determine whether Licciardi's statements implicate *Bruton*, the Court must first determine whether they are testimonial in nature.

Though the Supreme Court has declined to adopt a firm test to determine whether statements are "testimonial," it stated in *Crawford*:

> "Testimony," . . . is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
> Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent—

---

[22] *United States v. Dargan*, 738 F.3d 643, 650–51 (4th Cir. 2013) (holding that *Bruton* was "simply irrelevant in the context of nontestimonial statements."); *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) ("[B]ecause *Bruton* is no more than a by-product of the Confrontation Clause, the [Supreme] Court's holdings in *Davis* and *Crawford* likewise limit *Bruton* to testimonial statements."); *United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010) ("The threshold question in every case is whether the challenged statement is testimonial."); *United States v. Pike*, 292 F. App'x 108, 112 (2d Cir. 2008); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements."); *United States v. Dale*, 614 F.3d 942, 956 (8th Cir. 2010)(holding that *Bruton* does not apply to nontestimonial statements);. *Smith v. Chavez*, 565 F. App'x 653 (9th Cir.), *cert. denied sub nom*. *Smith v. Foulk*, 135 S. Ct. 306, 190 L. Ed. 2d 223 (2014) ("*Bruton*, however, applies to statements that violate the Confrontation Clause of the Sixth Amendment."); *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013) ("Thus, we are obliged to 'view *Bruton* through the lens of Crawford' and, in doing so, we consider 'whether the challenged statement is testimonial.'").

[23] 766 F.3d 373 (5th Cir. 2014).

> that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it.[24]

Under any definition it is clear that the text message conversation between Sharper and Licciardi was not testimonial in nature. The conversation bears none of the indicia of a formal statement sufficient to render it testimonial. Nothing about the conversation would cause either participant to believe that the statement would be available for use at a later trial. Accordingly, the conversation is not "testimonial" in nature and *Bruton* is not implicated.

## II. Motions to Dismiss and Motions Strike

### A. Motions to Strike Surplusage (Doc. 310 and 317)

Both Nunez and Licciardi ask the Court to strike certain portions of the Fourth Superseding Indictment as surplusage. Allegations of an indictment

---

[24] *Crawford*, 541 U.S. at 51–52.

that are not necessary to prove the crime charged are surplusage.[25] A district court has discretion to strike surplusage from an indictment upon motion of the defendant under Rule 7(d) of the Federal Rules of Criminal Procedure; however, the level of proof required to strike surplusage from an indictment is "exacting."[26] Surplusage is to be stricken as prejudicial where it "serve[s] only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved."[27] "Stated differently, a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."[28] A court may also strike as surplusage any "[i]ndirect expressions, implied allegation, argumentative statements, and uncertainty due to generalizations in language[.]"[29] Surplusage need not be stricken, however, "where the charge is not materially broadened and the accused is not misled."[30]

In separate Motions, Defendants ask the Court to strike the "overt acts" listed in paragraphs 8 through 17 of the indictment and the "general definitions" included in paragraphs 2 through 7. Defendants aver that the overt acts were added to the indictment as an end run around the Court's

---

[25] *United States v. Prejean*, 429 F. Supp. 2d 782, 796 (E.D. La. 2006) (citing *United States v. Miller*, 471 U.S. 130, 136–37 (1985)).
[26] *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).
[27] *Id.*
[28] § 128 Amendment of Indictments; Surplusage, 1 Fed. Prac. & Proc. Crim. § 128 (4th ed.).
[29] *United States v. Prejean*, 429 F. Supp. 2d 782, 796 (E.D. La. 2006) (quoting *United States v. Williams*, 203 F.2d 572, 574 (5th Cir.1953)).
[30] *United States v. Trice*, 823 F.2d 80, 92 (5th Cir. 1987).

ability to make evidentiary rulings regarding this evidence under FRE 404(b) and 413. They contend that these overt acts will inflame the jury, confuse the issues, and blur the elements necessary for conviction. The central inquiry to the disposition of this Motion is whether evidence of the overt acts is admissible and relevant to the charge.[31] As a preliminary note, proof of overt acts is not necessary to proving the conspiracy charged under 21 U.S.C. § 846.[32] This does not, however, indicate that the overt acts must be stricken from the Indictment. The Court has reviewed the Superseding Indictment and the Government's evidence in support of the alleged overt acts and concludes that such evidence is both relevant and generally admissible[33] to prove the existence of the charged conspiracy.

The Court likewise concludes that there is nothing unduly prejudicial concerning the "definitions" section of the Indictment. Defendants' Motions are predominately directed at paragraph 7 of the superseding indictment, which provides a definition of the terms "molly" and "molly-whop."[34] This definition is relevant to the crime of which the Defendants are accused and

---

[31] *See United States v. Desantis,* 802 F. Supp. 794, 799 (E.D.N.Y. 1992).
[32] *United States v. Pumphrey*, 831 F.2d 307, 308 (D.C. Cir. 1987).
[33] The Court does not, however, make any specific evidentiary rulings regarding this evidence at this time.
[34] Though Nunez's Motion challenges the inclusion of all of the paragraphs under "general terms and definitions," he concedes in his brief that he is primarily concerned with paragraph 7.

describes the manner in which the alleged conspiracy was executed.[35] Accordingly, it need not be stricken.

### B. Motion to Request Evidentiary Hearing (Doc. 313)

Defendant Licciardi has filed a Motion to Request Hearing Pursuant to Federal Rule of Evidence 104. He contends that such a hearing is necessary for the Court to fully consider the motions pending before the Court. The Court disagrees. The Government has submitted the evidence supporting the overt acts to the Court for its review. The Court is satisfied that this evidence is intrinsic to the charged conspiracy count. Accordingly, this Motion is denied.

### C. Motion to Dismiss for Vindictive Prosecution (Doc. 320)

Nunez next contends that the "parade of indictments" in this case is indicative of vindictive prosecution and warrants dismissal of the charges against him in this case. The Government responds, arguing that Nunez is not entitled to a presumption of vindictiveness in a pretrial situation. "While a person may be penalized for violating the law, he may not be punished for exercising a protected statutory or constitutional right. Such punishment constitutes a violation of Due Process."[36] In certain situations, a defendant may be entitled to a presumption of vindictiveness:

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a

---

[35] *See United States v. Stein,* 429 F. Supp. 2d 633, 647 (S.D.N.Y. 2006) ("While defendants doubtless wish that the government had employed less colorful and prejudicial language, these terms are relevant to the conspiracy of which they stand accused.").

[36] *United States v. Garcia*, No. CRIM. A. 99-88, 1999 WL 596263, at *3 (E.D. La. Aug. 5, 1999) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).

13

successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in *Hardwick* that as a matter of fact his actions were not vindictive. [37]

When the presumption does not apply, the defendant must affirmatively prove actual vindictiveness.[38]

Though the Fifth Circuit has indicated that the presumption may be applicable to pre-trial situations,[39] both the Supreme Court and the Fifth Circuit have expressed reluctance to apply the presumption of vindictiveness to pretrial actions by the prosecution. "The context of the entire proceedings includes the timing of the prosecutor's decision. While the general standard articulated in *Krezdorn* makes no distinction between pre-trial and post-trial decisions, the Supreme Court has observed that 'a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.'"[40] This is because "[i]n the

---

[37] *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir. 1983).
[38] *See Wasman v. United States*, 468 U.S. 559, 569 (1984).
[39] *United States v. Brown*, No. CRIM. A. 01-004, 2001 WL 238183, at *5 (E.D. La. Mar. 7, 2001), aff'd, 298 F.3d 392 (5th Cir. 2002) ("Nonetheless, the Fifth Circuit rejected a pre-trial/post-trial dichotomy in *Krezdorn* . . . making this standard applicable in a wide variety of situations.").
[40] *United States v. Brown*, 298 F.3d 392, 405 (5th Cir. 2002).

course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance."[41] For example, the presumption of vindictiveness does not apply to superseding indictments that come after a potential plea agreement is rejected.[42] Similarly, the Supreme Court has indicated that "[i]t is unrealistic to assume that a prosecutor's probable response to [pretrial] motions is to seek to penalize and to deter."[43] Accordingly, the Court will not apply a presumption of prosecutorial vindictiveness to the pretrial amplification of charges against Erik Nunez.

Even assuming, arguendo, that the Court were to apply a presumption of vindictiveness, it finds that the Government has come forward with sufficient objective evidence to rebut such a presumption. The Fifth Circuit has indicated that an increase in the severity or number of charges might be explained by, inter alia, the fact that additional evidence has been obtained since the first indictment.[44] The Government has produced to the Court, for in camera inspection, the Grand Jury transcripts in this matter, as well as additional evidence in support of the charges against Erik Nunez. The Court has reviewed these materials and finds that they support the Government's contention that more evidence has been developed against Nunez since the

---

[41] *United States v. Goodwin*, 457 U.S. 368, 381 (1982).
[42] *Id.*
[43] *Id.*
[44] *Hardwick v. Doolittle*, 558 F.2d 292, 301 (5th Cir. 1977).

return of the original indictment. Because the Government has sufficient evidence to rebut any presumption of vindictiveness, the burden shifts to Nunez to prove actual vindictiveness. Because he has presented no objective evidence to counter the Government's assertions and prove actual vindictiveness, his Motion to Dismiss for Vindictive Prosecution must be denied.

### D. Motion to Produce Grand Jury Transcripts (Doc. 318)

Relatedly, Nunez has filed a Motion seeking disclosure of the transcripts of the testimony put before the grand jury in support of the charges of drug distribution or conspiracy to distribute drugs with the intent to commit rape. He avers that the Government has not produced any discovery to support these allegations, and that its star witness Darren Sharper refutes these allegations. With regard to the disclosure of grand jury proceedings, Federal Rule of Criminal Procedure 6(E)(ii) (E) states that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." "The proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings. The burden is on the party seeking disclosure to show that "a particularized need" exists for the materials that outweighs the policy of secrecy."[45] A party seeking discovery of grand jury transcripts must show "(1) the material he seeks is needed to

---

[45] *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993).

avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) his request is structured to cover only material so needed."[46]

Following in camera review of the requested grand jury material, the Court finds that the Defendant has not demonstrated a "particularized need" for the material requested. There is nothing in the Grand Jury material that "is needed to avoid a possible injustice" in this or any other judicial proceeding, and there is nothing contained therein to suggest prosecutorial misconduct on the part of any of the government attorneys. Accordingly, Nunez's Motion for Production of Grand Jury Transcripts is denied.

### E. Motion to Dismiss Count 6 (Doc. 321).

Defendant Nunez next avers that Count 6 of the Fourth Superseding Indictment should be dismissed on procedural due process grounds. In this Count Nunez is charged with obstructing a grand jury proceeding in violation of 18 U.S.C. § 1512(c)(1). In pertinent part, the statute provides:

> (c) Whoever corruptly--
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> > (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
> shall be fined under this title or imprisoned not more than 20 years, or both.
> (f) For the purposes of this section--

---

[46] *Id.*

17

> (1) an official proceeding need not be pending or about to be instituted at the time of the offense; and
> (2) the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.
>
> (g) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance--
>> (1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or
>> (2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

Nunez avers that this statute is unconstitutional both on its face and as applied to him because a defendant cannot know at the time he is committing the crime that his conduct is proscribed by the statute. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ."[47] "[T]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law."[48]

Nunez avers that the obstruction statute is unconstitutional under the due process clause because Nunez need not know that a federal official

---

[47] *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03 (1966)).

[48] *Id.*

18

proceeding is or will be underway at the time of his alleged criminal act in order to be convicted under § 1512(c). The Court perceives no constitutional infirmity with the scienter requirements of § 1512, either on its face or as applied to Nunez.[49] The statute is not overly vague and its plain meaning is clear on its face. Accordingly, this Motion is denied.[50]

### F. Motion to Re Urge (Doc. 312)

In addition to his Motion to Sever, Defendant Licciardi has also moved to reurge his Motion to Dismiss on Ex Post Facto Grounds (Doc 205), his Motion to Dismiss on Double Jeopardy Grounds (Doc 204) and his Motion for Judicial Referral to the Department of Justice (Doc 203). He has presented no new arguments in support of these grounds for dismissal, and the Court sees no reason to revisit its prior rulings on these issues.[51] Accordingly, these Motions are denied for reasons previously stated.

### CONCLUSION

For the foregoing reasons, Defendant Brandon Licciardi's Motion to Strike Superseding Indictment (Doc. 310); Defendant Eric Nunez's Motion to Strike Superseding Indictment Surplusage (Doc. 317); Defendant Erik Nunez's Motion to Dismiss for Vindictive Prosecution (Doc. 320); Defendant Erik Nunez's Motion for Production of Grand Jury Transcripts (Doc. 318);

---

[49] *See United States v. Tyler,* 281 F.3d 84, 93 (3d Cir. 2002).
[50] The Court notes that it addressed similar arguments in its rulings on the earlier motions to dismiss on ex post facto and double jeopardy grounds. (Docs. 270 and 286).
[51] Docs. 270 and 286.

Defendant Erik Nunez's Motion to Dismiss Count 6 (Doc. 321); Defendant Erik Nunez's Motion to Sever (adopted by Defendant Licciardi) (Doc. 319); Defendant Brandon Licciardi's Motion to Request an Evidentiary Hearing Pursuant to Federal Rule of Evidence 104 (Doc. 313); and Defendant Brandon Licciardi's Motion to Reurge Rec Doc Nos 129, 203, 204, and 205 (Doc. 312) are **DENIED.**

New Orleans, Louisiana this 6th day of June, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**