# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                      **NO: 14-284**

**BRANDON LICCIARDI**                           **SECTION: "H" (4)**
**ERIK NUNEZ**

## ORDER AND REASONS

Before the Court is Defendant Brandon Licciardi's Motion to Dismiss for Prosecutorial/Governmental Misconduct and Misuse of the Grand Jury (Doc. 414).  Erik Nunez has adopted this Motion (Doc. 423).  For the following reasons, this Motion is **DENIED**.

## BACKGROUND

The background facts of this criminal action have been detailed at length in the Court's previous orders.  Familiarity with these orders is assumed.  At this time the Court will address Defendant Brandon Licciardi's Motion to Dismiss for Prosecutorial/Governmental Misconduct.

## LAW AND ANALYSIS

In this motion Defendant Licciardi asks the Court to dismiss the pending indictment on grounds of alleged prosecutorial misconduct.  Specifically, he avers that the Government has misused the Grand Jury proceedings for purposes of trial preparation, withheld *Brady* information, engaged in improper communications with the Court, and assisted in allowing the state to manipulate the allotment process in the contemporaneous state court proceedings.  The Court will address these allegations in turn.

## I. Misuse of the Grand Jury

Defendant contends that the Government misused the Grand Jury as a tool for trial preparation purposes.  Specifically, he alleges that witness T.P. was called before the Grand Jury solely in an effort to "freeze" her testimony for trial purposes.  The Government called T.P. before the Grand Jury as part of obtaining the Fourth Superseding Indictment whereby, inter alia, certain overt acts were added to the conspiracy charge.

Judge Lemmon recently outlined the appropriate legal standard to consider in ruling on a motion to dismiss for prosecutorial misconduct in a grand jury proceeding:

> "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[ ]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988).  However, an indictment may be dismissed "for prosecutorial misconduct which is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Pino*, 708 F.2d 523, 530 (10th Cir.1983).  To establish the defense of prosecutorial misconduct, the defendant must show that: (1) the prosecutor engaged in improper conduct; and, (2) the prosecutor's improper conduct affected the defendant's substantial right. *United States*

*v. Winters*, 530 Fed.Appx. 390, 399 (5th Cir.2013). In *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir.1982), the United States Court of Appeals for the Fifth Circuit explained that even upon a showing of the "most egregious prosecutorial misconduct," the indictment may only be dismissed upon proof of actual prejudice, "when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury." "But even with this standard, a 'common theme of the cases is that prosecutorial misconduct alone [or at least rarely] is not a valid reason to dismiss an indictment.' " *United States v. Hillman*, 642 F.3d 929, 934 (10th Cir.2011) (quoting *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir.1987), aff'd sub nom., *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)).[1]

The Court cannot say that Defendant has met this high standard.  The actions of public officials, such as a grand jury and its advisors, are entitled to a presumption of regularity.[2]  Though it is true that it is not proper for the government to employ the grand jury for the purpose of discovery or for preparing a pending indictment for trial,[3] Defendants have not pointed the Court to a case where a court found dismissal of the indictment to be the appropriate remedy for such a violation.

Even assuming, arguendo, that the prosecutors used the grand jury to improperly freeze T.P.'s testimony for trial, such conduct is not sufficiently "flagrant to the point that there [was] some infringement on the grand jury's ability to exercise independent judgment."[4]  Licciardi's argument focuses on an isolated portion of one witness's testimony before the Grand Jury.  This alone is insufficient to establish that the Government's primary purpose for convening the Grand Jury was to conduct discovery or strengthen its case.

---

[1] *United States v. Jackson*, 22 F. Supp. 3d 636, 641–42 (E.D. La. 2014).
[2] *Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972).
[3] *Id.*
[4] *Pino*, 708 F.2d at 530.

Indeed, when placed in the context of the procedural history of this case, it is apparent that the Government returned to the Grand Jury for the purposes of refining the indictment following Defendants' challenges to its deficiencies. "A superseding indictment may be obtained by the government at any time prior to trial."[5]  The fourth superseding indictment specifically set forth overt acts in support of the conspiracy count.  As part of her testimony, T.P. was asked about her knowledge of any of these overt acts.  The Government contends that its purpose in asking T.P. if she had any exculpatory information regarding Mr. Licciardi was to ensure that the Grand Jury had the benefit of all of the evidence.  Accordingly, the Court finds that T.P's testimony before the Grand Jury was proper.

## II. Withholding *Brady* Evidence

Licciardi contends that the Government has improperly withheld *Brady* material in this matter.  This claim is unsubstantiated.  Indeed, the Government has certified to this Court that, "to the best of its knowledge . . . all Brady material in its possession has been disclosed to the defendants."[6]  Absent affirmative evidence of concealment, the Court will take the Government at its word.  Because Licciardi cannot articulate a specific *Brady* violation, dismissal is not warranted.

## III. Improper Communications With the Court

Licciardi next alleges that the Government improperly communicated with the Court, warranting dismissal of the indictment.  He points to the Government's Rule 35 motion on behalf of Glen McInerney, the Court's in camera inspection of *Brady* material, and status conferences held regarding former co-defendant Darren Sharper, which counsel for Licciardi was not

---

[5] *United States v. Fisher*, 871 F.2d 444, 452 (3d Cir. 1989).
[6] Doc. 458.

allowed to attend.  The Court will address each of these allegedly improper communications in turn.

Glen McInerney was indicted on June 21, 2012, and his case was allotted to this section.  He entered into a plea agreement and was sentenced by the Court to 41 months.  Subsequently, he obtained information regarding Licciardi as an undercover informant for the Government.  As a result, the Government filed a Rule 35 motion on behalf of Glen McInerney seeking a reduction in his sentence.  The Court granted that motion.  By chance, the criminal action naming Licciardi as a defendant was also allotted to this section. Licciardi contends that the Government's communications with the Court regarding this Rule 35 motion amount to improper communication with the Court regarding Brandon Licciardi.  He cites no authority in support of this contention.   The Court perceives nothing improper in handling Mr. McInerney's Rule 35 motion prior to entertaining substantial motion practice in this matter.

Licciardi next contends that the Court's in camera review of potential *Brady* material was improper.  In support of this argument he relies largely on the Sixth Circuit case of *United States v. Minskey*.[7]  This case is, however, easily distinguishable from the matter at bar.  There, the court found that reversal was warranted where the trial court held an ex parte bench conference with the Government during trial as part of its determination of whether material should be produced under *Brady*.  The Court specifically noted "that an in camera review by the court was not only proper, but probably required."[8]

---

[7] 963 F.2d 870, 874 (6th Cir. 1992).  Defendant also cites to *U.S. v. Five Persons*, 472 F.Supp. 64 (D.N.J. 1972), wherein a district court judge found that pretrial in camera review of potential *Brady* material was improper.  This authority is not persuasive, as various appellate courts, including the Fifth Circuit, have held that in camera *Brady* review is not only proper, but is on occasion mandated.  *See, e.g., United States v. Gaston*, 608 F.2d 607, 613 (5th Cir. 1979).

[8] *Minskey*, 963 F.2d at 874.

The court cautioned that "review in this case, however, should have been performed early in the proceedings, not at the eleventh hour."[9] A plain reading of *Minskey* indicates that it was the late hour of the in camera *Brady* review, coupled with the improper ex parte bench conference during the trial, that warranted reversal.

In this matter, the Court has done precisely what the Sixth Circuit recommended—conducted an early in camera review of potential *Brady* material to avoid eleventh hour rulings. In response to Defendants' numerous *Brady* motions, the Court admonished the Government to turn over all *Brady* material expeditiously and offered to conduct an in camera inspection of any questionable material. Defendants made no objection to in camera review at that time. Indeed, the Fifth Circuit has expressly endorsed pretrial in camera review of potentially discoverable evidence for a *Brady* determination.[10] Licciardi has cited no authority for the proposition that he is entitled to an itemization of all material reviewed by the Court for such purposes. Indeed, a detailed itemization such as the one sought by the Defendant might very well defeat the purpose of an in camera inspection. Accordingly, the Court perceives no infirmity in its in camera review of potential *Brady* material.

Licciardi also alleges that status conferences held regarding former co-defendant Darren Sharper, which counsel for Licciardi were not allowed to attend, constituted improper ex parte communications. This Court disagrees. Licciardi is correct in noting that he is entitled to representation by counsel at "critical stages" of the proceedings against him. He is incorrect, however, in his contention that these status conferences constituted such "critical stages." Licciardi's arguments conflate case law concerning effective assistance of

---

[9] *Id.*

[10] *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002). The Court also notes that, at the parties' behest, it decided the discovery motions in lieu of the magistrate judge.

counsel and ex parte communication.  Notably, Defendants do not cite, and this Court could not locate, a case wherein a court held that, where one defendant has entered a guilty plea, counsel for all codefendants must be present at a status conference that applies to only that defendant.  Critical stages of proceedings include those "where substantial rights of a criminal accused may be affected."[11]  These conferences involved no such rights, as they were focused solely on issues specific to Darren Sharper.  No issue as to Brandon Licciardi or Erik Nunez was discussed at these conference, accordingly, it is impossible for these conferences to have implicated their substantial rights.  Accordingly, no improper ex parte communication occurred.

For the foregoing reasons, the Court finds that, contrary to Licciardi's assertions, there have been no improper ex parte communications between the Court and the Government in this matter.

## IV. Prosecutorial Misconduct as to the Manipulation of Evidence Pertaining to the Date of Offense and Allotment in Parallel State Court Proceedings

Finally, Licciardi accuses the Government of misconduct because it "has allowed and had knowledge that the state judicial allotment process was manipulated."  By way of background, Defendants face state criminal charges that arise largely out of the same conduct charged in the federal indictment pending before this Court.  State court allotment procedures are based on the earliest date of offense alleged in the indictment.  Licciardi contends that state court prosecutors fabricated the date of the offense involving victim J.B. in order to obtain what it perceived to be a favorable allotment.  Licciardi contends that the Government was complicit in this alleged manipulation.  Even assuming the truth of Licciardi's tenuous allegations, he has failed to

---

[11] *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).

demonstrate how such conduct would affect his rights in this proceeding. Accordingly, dismissal of the indictment is not warranted.

## CONCLUSION

For the foregoing reasons, Defendant Brandon Licciardi's Motion to Dismiss for Prosecutorial/Governmental Misconduct (as adopted by Erik Nunez) is **DENIED**.

New Orleans, Louisiana this 7th day of July, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**