UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 14-284 |
| BRANDON LICCIARDI<br>ERIK NUNEZ | SECTION: "H" (4) |

ORDER AND REASONS

Before the Court are Defendant Erik Nunez's Motion in Limine to Exclude Licciardi's Out of Court Statements (Doc. 376), Defendant Nunez's Motion in Limine to Prevent Interpretation of Evidence that is Self-Explanatory (Doc. 377) (adopted by Defendant Brandon Licciardi); Defendant Nunez's Motion in Limine to Prevent the Use of the Term "Rape Kit" by the Government and its Witnesses (Doc. 378); Defendant Nunez's Motion in Limine to Limit the Testimony of Prosecution Expert Dr. Cynthia Morris-Kukoski (Doc. 379) (adopted by Defendant Licciardi), Defendant Licciardi's Motion in Limine to Preclude the Government from Arguing Defendant had an Enhanced Duty as a St. Bernard Police Officer During Opening and Closing Arguments (Doc. 380); Defendant Licciardi's Motion to Preclude Reference to any Co-Conspirators (Doc. 382); Defendant Licciardi's Motion in Limine to Preclude Admission of Video from Ohm Bar (Doc. 384), Defendant Licciardi's Motion in Limine to Preclude Admission of 404(b) and 413 Evidence (Doc. 385);

1

and Defendant Nunez's Motion to Suppress Evidence and Request for a Franks Hearing (Doc. 396). These Motions were argued before the Court on June 23, 2016, and are disposed of as follows.

## BACKGROUND

The background facts of this criminal action have been detailed at length in the Court's previous orders. Familiarity with these orders is assumed. At this time the Court will address the Motions in Limine filed by Defendants in advance of trial.

## LAW AND ANALYSIS

**I. Motion in Limine to Exclude Licciardi's Out of Court Statements (Doc. 376)**

In this Motion Nunez contends that both the testimonial and nontestimonial out-of-court statements of Brandon Licciardi must be excluded. The Government acknowledges that it will not attempt to introduce Licciardi's testimonial statements. Accordingly, the Court need only address the admissibility of Licciardi's nontestimonial out of court statements.

Nunez seeks to exclude statements made by Licciardi to Glen McInerney and a text message conversation between Darren Sharper and Brandon Licciardi. He contends that these statements are hearsay and should not be admitted. The Court will address each of these pieces of evidence in turn.

**A. McInerney Tapes**

Defendant Nunez challenges the admissibility of recordings made by Government informant Glen McInerney. Mr. McInerney recorded multiple conversations between himself and Defendant Licciardi as part of the Government's investigation of the conspiracy charged in this indictment.

Nunez challenges the admissibility of a portion of the July 13, 2014, conversation, wherein Licciardi states, "Look all I had in my phone where they got Eric, that dude Eric, all I had in my phone was, Darren said something, saying, Oh Eric said he fucked those girls too."  The Government's written opposition does not address the admissibility of the McInerney tapes; however, at oral argument it argued that these statements should be admitted against Nunez as opposing party statement or statements in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2).  In its Notice of Intent to Use Evidence, the Government further contends that these statements are admissible against both Defendants pursuant to 804(b)(3) as statements against penal interest.  The Court finds that this statement may not be offered against Nunez as an opposing party statement simply because it is not his statement.  Likewise, it may not be offered as a statement in furtherance of the conspiracy because it was made after the termination of the conspiracy.

The Court cannot, however, make a determination as to the admissibility of this statement as a statement against penal interest without further information concerning the full context in which the statement at issue was made. To be admissible under Rule 804(b)(3), a statement must meet the following three-part test:

> (1) The declarant must be unavailable; (2) The statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) The statement must be corroborated by circumstances clearly indicating its trustworthiness.[1]

Where the statements at issue are non-testimonial, such as in this case, such statements may be admitted against both the declarant and his co-defendant

---

[1] *United States v. Ebron*, 683 F.3d 105, 133 (5th Cir. 2012).

3

without implicating *Bruton* concerns.[2]  Without further context regarding the challenged portion of Licciardi's statement in the McInerney Tapes, the Court is unable to determine whether the statement at issue is one that would "so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true."[3]  Accordingly, the Motion is deferred with regard to the McInerney Tapes.  The Government shall provide the Court with a copy of the McInerney Tapes the day preceding their proposed introduction.  At that time the Court will make a determination as to their admissibility under Rule 804(b)(3).

### B. Text Messages Between Licciardi and Sharper

Nunez next seeks an order precluding introduction of a text message conversation between Darren Sharper and Brandon Licciardi wherein Nunez is mentioned and implicated in criminal activity.  The Government responds, averring that this conversation is admissible under the hearsay exemption for coconspirator statements.  Licciardi likewise opposes the exclusion of this conversation.

In order for a coconspirator's statement to be admissible, the trial court must determine, based on substantial and independent evidence, that a conspiracy existed, that the declarant and the defendant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy.[4]  The Fifth Circuit has noted that the exemption for coconspirator statements may be applied rather broadly:

> This Court has noted that the "in furtherance of the conspiracy" standard must not be applied too strictly, "lest we defeat the purpose of the exception." *United States v. James*, 510 F.2d 546, 549 (5th Cir.), cert. denied, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). Mere conversation between coconspirators is not

---

[2] *See id.*
[3] *Id.*
[4] *United States v. Miller*, 664 F.2d 94, 98 (5th Cir. 1981).

4

>admissible under the exception. *Id.; United States v. McGuire*, 608 F.2d 1028, 1032 (5th Cir. 1979). Puffing, boasts, and other conversation, however, are admissible when used by the declarant to obtain the confidence of one involved in the conspiracy. *Id.* at 1033. Statements made by the coconspirator to allay suspicions are also admissible. *United States v. James*, 510 F.2d at 549-50.[5]

Nunez's objection to the application of the co-conspirator exception is based on his assertion that the statement is not one made "in furtherance" of the conspiracy. This Court disagrees. The discussion between Licciardi and Sharper was made in the course of the alleged conspiracy and involves setting its parameters. Nunez would have the Court apply an impermissibly narrow view of the co-conspirator exemption. At trial, should the Government lay the appropriate foundation establishing through independent evidence that a conspiracy existed and that both Nunez and Licciardi were members of the conspiracy, then these text messages between Licciardi and Sharper would be admissible. Accordingly, Court will not exclude the text message conversation between Darren Sharper and Brandon Licciardi at this time, as it is a statement in furtherance of the charged conspiracy.

## II. Motion in Limine to Prevent Interpretation of Evidence that is Self-Explanatory (Doc. 377)

Erik Nunez has moved the Court to enter an order barring the prosecution from offering interpretative testimony or commentary on evidence that is otherwise self-explanatory. Licciardi has adopted this Motion. The Government avers that this Motion is premature and overbroad. The crux of Defendants' Motion is that the government should not be allowed to offer commentary and interpretation on certain evidence, such as commentary on what is occurring in surveillance video or commentary on the meaning of text

---

[5] *Id.*

message conversations between the parties. This Court agrees; however, it finds that it would be more appropriate to rule on such matters as they arise at trial. Accordingly, ruling on this motion is deferred. The Government is strongly cautioned, however, that this Court will not allow gratuitous interpretation of evidence as it is admitted. For example, while the prosecution may identify individuals in a video as it is played for the jury, it may not simultaneously provide its interpretation of the events shown therein. Likewise, while the Government may identify the participants in a text message conversation and define certain obscure terms relevant to the alleged conspiracy that have not been previously defined, it may not otherwise offer its interpretation of the meaning of the conversation. That lies within the province of the jury. While appropriate during closing arguments, such color commentary is inappropriate as evidence is being admitted, as it might prejudice the jury's view of the evidence.

## III. Motion to Prevent the Prosecution and Its Witnesses from using the Term "Rape Kit" (Doc. 378)

Nunez next moves for an order preventing the prosecution from using the term "rape kit" at trial to describe the forensic examination conducted by a sexual assault nurse examiner. Nunez avers that the term rape kit "incorrectly and inappropriately implies that a rape in fact occurred." The Government disputes that the use of the term is inflammatory, and argues that its use is appropriate because it is a term employed by one of the victims and another cooperating witness. The Court finds that the use of the term "rape kit" is not unduly prejudicial. Indeed, the term "rape kit" no more definitively indicates that a rape occurred than the term "sexual assault nurse examiner." Additionally, the Court could locate no case where use of the term "rape kit"

was prohibited. In fact, the term is itself used in many cases. Accordingly, this motion is denied.

## IV. Motion to Limit the Testimony of Prosecution Expert Dr. Cynthia Morris-Kukoski (Doc. 379).

Nunez's motion asks the court to prohibit the Government's expert witness from testifying that certain drugs have been used for date rape in other cases, contending that this is tantamount to the witness offering testimony on the issue that Nunez must have distributed the drug with the intent to commit rape. The Government responds in opposition.

As the Fifth Circuit has noted:

> Expert testimony may be admitted pursuant to Federal Rule of Evidence 702 if the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence. Under Federal Rule of Evidence 704(b), however, expert testimony may not be admitted in a criminal case to show that the defendant had the requisite mental state to satisfy an element of the crime charged. In the context of drug-related criminal trials, [the Fifth Circuit has] allowed law enforcement expert witnesses to give background testimony about the significance of certain conduct or methods of operation unique to the drug business so long as the testimony is helpful and its relevance is not substantially outweighed by the possibility of unfair prejudice or confusion.[6]

Defendants contend that offering testimony that certain drugs may be used to facilitate date rape crosses the line into an opinion concerning an ultimate legal issue in the case. The Court finds, however, that Dr. Morris-Kukoski's testimony is similar to the testimony "concerning certain conduct or methods operation unique to the drug business" that the Fifth Circuit has found permissible in drug cases. Testimony that certain drugs have been used

---

[6] *United States v. Morin*, 627 F.3d 985, 995 (5th Cir. 2010) (internal citations and quotation marks omitted).

to facilitate rape provides the jury with permissible "background" information. Accordingly Dr. Morris-Kukoski's testimony is admissible as long as she does not stray across the line offering "a direct opinion as to the defendant's mental state or by giving the 'functional equivalent' of such a statement."[7]

**V. Motion In Limine to Preclude Arguing Licciardi had an "Enhanced Duty" as a Police Officer (Doc. 380)**

Licciardi argues that the Government should be precluded from arguing that he had an enhanced duty as a police officer. In support of this contention, he cites to the D.C. Circuit case of *United States v. Monaghan*.[8] In that case the prosecutor, in closing arguments, argued that the defendant should be held to a higher standard of behavior because he was a police officer. The court specifically noted that such comments might have been improper; however, it did not find them to be so prejudicial as to warrant a new trial. The Government argues that it should be allowed to make such arguments because, though improper, they did not amount to reversible error in that case. This argument is not persuasive. As noted at oral argument, the fact that Licciardi was a police officer at the time of the alleged conspiracy is just that—a fact. This fact may not be used by the Government to argue, directly or indirectly, that it should bear a reduced burden in proving Licciardi's guilt. Further, the Government may not argue that he should be held to a higher standard because of his occupation. Accordingly, the Government is precluded from making impassioned appeals to the jury regarding Licciardi's occupation. This motion is granted.

---

[7] *Id.*
[8] 741 F.2d 1434, 1442 (D.C. Cir. 1984).

**VI. Motion to Preclude Reference to any Co-Conspirators (Doc. 382)**

In this motion, Liccaridi seeks an order prohibiting the Government and its witnesses from naming any unindicted coconspirators at trial. At oral argument the Government seemed to indicate that it did not intend to name anyone because it does not know who they are. Following oral argument, however, the government filed under seal a brief wherein it asserted, essentially, that it should be able to name a certain individual as an unindicted co-conspirator. This latest about-face is typical of the Government's handling of the issue of unindicted co-conspirators. Earlier indictments indicated that the charged conspiracy involved unindicted individuals "both known and unknown to the grand jury." During a status conference in this matter, the Government stated verbally that a certain individual was an unindicted co-coconspirator. Subsequently, in response to the Court's order that it supply a bill of particulars naming any unindicted co-conspirators, the Government did not do so because "the government does not have evidence sufficient to convict beyond a reasonable doubt any other individual." The Court then ordered that the name mentioned at the earlier status conference be filed into the record under seal. Subsequently, the Grand Jury issued Fourth and Fifth Superseding Indictments, wherein the reference to "known" unindicted coconspirators was removed.

The Government's position is that it cannot name the disputed individual as a co-conspirator because it has insufficient evidence to indict and convict this person; however, in the next breath it argues that it should be able to present evidence that this individual was part and parcel to the charged conduct. This paradoxical position is foreclosed by the most recent indictment, wherein the Grand Jury charged that any coconspirators were "unknown." Indeed, the Fifth Circuit has specifically noted that "no legitimate

governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights."[9]  Accordingly, the Government is bound by this most recent indictment, and may not argue the existence of any known coconspirators.

**VII. Motion in Limine to Preclude Admission of Ohm Video (Doc. 384)**

Licciardi's next motion seeks exclusion of the Ohm surveillance video that the Government contends shows Brandon Licciardi slipping a drugs into a victims drink. The Court has previously decided that the tapes should not be excluded under the rule of completeness.[10] Licciardi now contends that the tape should be precluded under the balancing test of Federal Rules of Evidence 401 and 403. He bases this assertion on the fact that the video does not show LL's drinking over the course of the evening, that the Louisiana Attorney General's Office concluded that the video did not show Licciardi drugging LL, and that LL was never sexually assaulted. The Government responds, arguing that the tape speaks for itself and that the jury should decide whether it shows Licciardi drugging LL.

Though couched as a relevance objection, this motion essentially represents a repackaging of arguments the Court previously rejected in its ruling on Licciardi's original motion to suppress this evidence. The Court sees no reason to revisit its ruling on the admissibility of the Ohm video. Additionally, the fact that LL was not sexually assaulted does not exonerate Licciardi, as the crime charged would be completed if he did in fact distribute drugs to her with the intent to commit rape. Finally, the Attorney General's

---

[9] *In re Smith*, 656 F.2d 1101, 1106 (5th Cir. 1981).
[10] Doc. 302.

10

interpretation of the video at issue is not relevant, as it is within the province of the jury to decide what the video shows. Accordingly, this motion is denied.

## VIII. Motion to Preclude 404(b) and 413 Evidence (Doc. 385)

With this Motion Licciardi seeks to prevent the Government from introducing evidence in support of the Overt Acts charged in the Fifth Superseding Indictment. The Court has already ruled that the evidence sought to be excluded is intrinsic to the charged conspiracy.[11] Accordingly, this motion is denied as moot.

## IX. Motion to Suppress Evidence and Request for a *Franks* Hearing (Doc. 396)

Nunez moves the Court for a hearing pursuant to *Franks v. Delaware*[12] and an order suppressing cell site location evidence obtained from AT&T. Nunez further avers that the facts set forth in support of this Motion should be considered by the Court as additional grounds in support of his Motion to Dismiss for Vindictive Prosecution, as well as his Motion for inspection of Grand Jury Materials. Pursuant to the Stored Communications Act (SCA), the government sought and obtained a court order compelling AT&T to produce to the Government cell site location information regarding Erik Nunez's cell phone. To obtain information under the SCA, the government must seek a court order. The government must offer "specific and articulable facts" showing reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. Importantly, this is a lesser showing than the probable cause standard required by the Fourth Amendment

---

[11] Doc. 392.
[12] 434 U.S. 154 (1978).

to secure a search warrant.[13] Nunez's primary contention in this motion is that the Government made material misrepresentations in the SCA application whereby it obtained Nunez's cell site location data. Specifically, he contends that the Government misstated that Nunez texted victim D.D. and admitted that Nunez and she had sex and that the Government omitted the fact that victim J.W. reported no misconduct during her first meeting with the police.

A *Franks* hearing permits a defendant to challenge the veracity of statements in a search warrant affidavit.[14] Because no search warrant is at issue here, a *Franks* challenge is inappropriate.[15] To the extent that Nunez is challenging the constitutionality of the SCA, such a challenge must fail in light of clear circuit precedent,[16] particularly because the government only plans to introduce the locations obtained when Nunez made was actively using his cell phone. The Fifth Circuit has held that the use of such communications does not constitute a search.[17] Accordingly, because the Government will limit the evidence introduced to this information, there is not even arguably an unsettled constitutional question for this Court to address. Defendant's motion for a *Franks* hearing is denied.

## CONCLUSION

For the foregoing reasons, Defendant Nunez's Motion in Limine to Prevent Interpretation of Evidence that is Self-Explanatory (Doc. 377) (adopted by Defendant Brandon Licciardi) is **DEFERRED**; Defendant Licciardi's Motion in Limine to Preclude the Government from Arguing Defendant had an Enhanced Duty as a St. Bernard Police Officer During

---

[13] *In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 606 (5th Cir. 2013).
[14] 434 U.S. at 154.
[15] *See United States v. Thousand*, 558 F. App'x. 666, 669 (7th Cir. 2014).
[16] *In re U.S. for Historical Cell Site Data,* 724 F.3d 600, 606 (5th Cir. 2013).
[17] *Id.*

12

Opening and Closing Arguments (Doc. 380) and Motion to Preclude Reference to any Co-Conspirators (Doc. 382) are **GRANTED**; Defendant Nunez's Motion in Limine to Exclude Licciardi's Out of Court Statements (Doc. 376) is **DENIED IN PART** and **DEFERRED IN PART**; and Defendant Nunez's Motion in Limine to Prevent the Use of the Term "Rape Kit" by the Government and its Witnesses (Doc. 378), Defendant Nunez's Motion in Limine to Limit the Testimony of Prosecution Expert Dr. Cynthia Morris-Kukoski (Doc. 379) (adopted by Defendant Licciardi), Defendant Licciardi's Motion in Limine to Preclude Admission of Video from Ohm Bar (Doc. 384), Defendant Licciardi's Motion in Limine to Preclude Admission of 404(b) and 413 Evidence (Doc. 385), and Defendant Nunez's Motion to Suppress Evidence and Request for a *Franks* Hearing (Doc. 396) are **DENIED**.

New Orleans, Louisiana this 7th day of July, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**